UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| STEVEN GANDARILLA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. EDCV 16-1715 FFM<br><br>MEMORANDUM DECISION AND ORDER |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration[1] denying his application for Disability Insurance Benefits and Supplemental Security Income. Plaintiff and defendant consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Pursuant to the Case Management Order issued on August 15, 2016 and an extension granted by the Court, on May 25, 2017, the parties filed a Joint Stipulation ("JS") detailing each party's arguments and authorities. The Court has reviewed the

/ / /

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017, and is hereby substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

1

administrative record (the "AR") and the Joint Stipulation.  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**PRIOR PROCEEDINGS**

On December 28, 2012, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging an onset date of July 15, 2009.  (AR 176-88.)  Plaintiff's applications were denied initially and on reconsideration.  (AR 56-116.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ").  (AR 138.)  ALJ Dante M. Alegre held a hearing on December 3, 2014.  (AR 36-55.)  Plaintiff appeared with counsel and testified at the hearing.  (*See id.*)  Furthermore, Gregory Jones, a vocational expert ("VE"), testified at the hearing.  (AR 49-53.)

On February 27, 2015, the ALJ issued a decision denying plaintiff benefits.  (AR 14-35.)  Based on his review of the evidence, the ALJ determined that plaintiff has the "following severe impairments: diabetes mellitus type II, peripheral neuropathy, degenerative joint disease of the right shoulder, mild lumbar osteoarthritis, minimal osteoarthritis of the left knee, obesity, major depressive disorder, and bipolar disorder."  (AR 20.)  Further, the ALJ found that plaintiff possesses the residual functional capacity ("RFC") to perform "light work" except that plaintiff can:

> lift 20 pounds occasionally and 10 pounds frequently, and can sit, stand, or walk six hours each out of an eight-hour workday.  He can occasionally push and pull with the right upper extremity.  He an [sic] occasionally climb, balance, stoop, kneel, crouch, and crawl.  He can occasionally reach overhead with the right upper extremity. He can perform unskilled, nonpublic work.

(AR 23.)

In making these determinations, the ALJ discredited plaintiff's claims about the limitations caused by his impairments.  (AR 28.)  The ALJ gave great weight to the

state agency medical and psychiatric consultants and gave little weight to the opinions of plaintiff's treating physician Dr. Arthur Jimenez, M.D., and the GAF scores. (AR 27-28.) Based on plaintiff's RFC and the testimony of the VE, the ALJ determined that plaintiff is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (AR 28-29.) Accordingly, the ALJ concluded that plaintiff has not been under a disability within the meaning of the Social Security Act from the alleged onset date of July 15, 2009 through the date of the decision. (AR 30.)

On June 29, 2016, the Appeals Council denied plaintiff's request for review. (AR 1-9.) Thereafter, plaintiff filed this action.

## CONTENTIONS

Plaintiff raises two issues in this action:

1. Whether the ALJ provided clear and convincing reasons to reject the opinion of the treating doctor.
2. Whether the ALJ failed to include all of the relevant mental limitations in the residual functional capacity.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Administration's decisions to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citations omitted). "Substantial evidence is more than a scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citation omitted). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Auckland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation marks omitted).

If the evidence in the record can reasonably support either affirming or reversing the ALJ's conclusion, the Court may not substitute its judgment for that of

3

the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). However, even if substantial evidence exists to support the Commissioner's decision, the decision must be reversed if the proper legal standard was not applied. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014-15 (9th Cir. 2003); *see also Smolen*, 80 F.3d at 1279.

## DISCUSSION

**A.     The ALJ Properly Evaluated The Treating Physician's Opinion**

Plaintiff first alleges that the ALJ erred in failing to provide clear and convincing reasons to reject the opinion of plaintiff's treating physician, Dr. Arthur Jimenez, M.D. (JS 4.)

**1.     Background**

*a.     Opinion of Treating Physician Dr. Jimenez*

Treatment records indicate that Dr. Jimenez treated plaintiff between October 2009 and September 2014. In November 2014, Dr. Jimenez completed a Physical Residual Functional Capacity Questionnaire in connection with plaintiff's disability applications. (AR 535-40.) Based on the treatment history, Dr. Jimenez concluded that plaintiff is incapable of performing even low stress jobs. (AR 537.) Specifically, Dr. Jimenez opined that plaintiff can walk half a block without rest or severe pain; sit for 30 minutes at a time; stand for 15 minutes at a time; and sit, stand, and walk each a total of 2 hours in an 8-hour day. (*Id.*) Further, plaintiff must walk every 15 minutes for 15 minutes at a time throughout an 8-hour workday; must be able to shift at will from sitting, standing, or walking; must be able to take unscheduled breaks every 30 minutes for 15-30 minutes at a time; must elevate legs at 90 degrees while sitting for half the day; and must use a cane or other assistive device when engaging in occasional standing/walking. (AR 538.) Plaintiff is also limited to rarely lifting and carrying less than 10 pounds; rarely looking down, turning his head, looking up, holding his head in a static position, twisting, stooping, crouching, and climbing

ladders and stairs. (AR 538-39.) Plaintiff is also restricted from reaching, handling, fingering, and pushing/pulling with his right hand. (AR 539.) Finally, plaintiff can never use his left foot and can use his right foot occasionally. (AR 540.) Dr. Jimenez concluded that because of these limitations, plaintiff is likely to be absent from work for more than four days per month. (*Id.*)

      b.    *ALJ Decision*

In his written decision, the ALJ gave little weight to Dr. Jimenez's opinion. (AR 26.) Based on his review of the record as a whole, the ALJ opined that plaintiff has the RFC to perform light work except that plaintiff can:

> lift 20 pounds occasionally and 10 pounds frequently, and can sit, stand, or walk six hours each out of an eight-hour workday. He can occasionally push and pull with the right upper extremity. He an [sic] occasionally climb, balance, stoop, kneel, crouch, and crawl. He can occasionally reach overhead with the right upper extremity. He can perform unskilled, nonpublic work.

(AR 23.) The ALJ rejected the severe limitations imposed by Dr. Jimenez, stating that that the doctor's opinion was "brief, conclusory, and inadequately supported by clinical findings." (AR 26.)

**2.  Legal Standard**

In evaluating physicians' opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither treat nor examine the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1502, 416.902, 404.1527(c), 416.927(c). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of physicians who do

not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The Ninth Circuit has held that an ALJ may reject a treating physician's uncontradicted opinion only with "clear and convincing" reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal quotation marks omitted). If the treating physician's opinion is controverted, the ALJ must still provide "specific and legitimate" reasons, supported by substantial evidence in the record, in order to reject the treating physician's opinion. *Lester*, 81 F.3d at 830; *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001).

### 3. Analysis

Here, Dr. Jimenez's opinions are contradicted by the state agency consultants on the initial and reconsideration levels. However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. The opinion of a non-examining physician may serve as substantial evidence when it is consistent with other independent evidence in the record. *Id.* at 830-31. The state agency consultants relied on a review of medical reports from a variety of doctors, including but not limited to Dr. Jimenez. Only Dr. Jimenez assigned severe restrictions to plaintiff's ability to work. Therefore, the ALJ must provide "specific and legitimate" reasons for discrediting Dr. Jimenez's opinion. *See Lester*, 81 F.3d at 830.

The ALJ stated that he gave little weight to Dr. Jimenez's opinion "because it is brief, conclusory, and inadequately supported by clinical findings." (AR 26.) The ALJ then provided additional reasons for rejecting the specific opinions that plaintiff was unable to work; that plaintiff suffered from functional limitations that would preclude work; and that plaintiff has significant mental limitations.

///

### a. The Opined Functional Limitations Are Inconsistent With the Objective Medical Evidence

The ALJ noted that with regard to claims based on plaintiff's diabetes mellitus and peripheral neuropathy, Dr. Jimenez's treatment notes reflect that in most visits plaintiff did not complain of any related symptoms. (AR 25.) The record indicates that plaintiff visited Dr. Jimenez frequently between October 2009 and September 2014. However, the treatment notes indicate that plaintiff complained of difficulty of grasping objects only once in April 2011. (AR 332.) Further, plaintiff complained of numbness and tingling in his extremities only twice, once in September 2013 during a visit with Dr. Jimenez and again in September 2014 during a neurological examination. (AR 461, 493.) The ALJ noted that during the September 2014 neurological examination, a physical examination of plaintiff reflected that sensation in his upper and lower extremities was normal and plaintiff had 5/5 muscle strength throughout, including grip strength. (AR 25) (citing AR 494.) The infrequent complaints and the inconsistent treatment notes contrast with a finding of ongoing and disabling symptoms of diabetes mellitus and peripheral neuropathy.

Second, the ALJ explained that the record reflected routine and conservative treatment with regard to plaintiff's alleged right shoulder degenerative joint disease. "A conservative course of treatment can undermine allegations of debilitating pain." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The ALJ noted that plaintiff first complained of shoulder pain in 2011. (AR 25) (citing AR 329.) Plaintiff subsequently underwent physical therapy, which yielded only slight improvements. (AR 349-50.) In 2012, a MRI was performed which yielded benign results; there was moderate tendinosis, but no rotator cuff tear. (AR 378.) Plaintiff received injections for his shoulder pain and the record reflects that by 2013, plaintiff no longer complained of shoulder pain and did not receive any further treatment for it. (*See* AR 389-94.) Plaintiff asserts that steroid injections are not considered

///

conservative treatment. The record, however, does not reflect steroid injections; rather, the medical record demonstrates only injections of lidocaine.

Third, the ALJ explained that the objective medical evidence regarding plaintiff's mild lumbar osteoarthritis and minimal left knee osteoarthritis does not support Dr. Jimenez's opinion. In December 2010, plaintiff had an X-ray of his lumbar spine which revealed mild osteoarthritis with no evidence of spondylosis or spondylolisthesis. (AR 385.) Plaintiff had an X-ray of his knee in December 2010, which revealed normal results. (AR 386.) In a subsequent X-ray of plaintiff's left knee in April 2011, there were "minimal changes of osteoarthritis," but the results were otherwise normal. (AR 384.) As the ALJ noted, there is no evidence in the record suggesting that plaintiff received or was recommended to receive further treatment such as physical therapy or injections for either his back or knees. (AR 25.)

Accordingly, inconsistency with the objective medical evidence was a specific and legitimate reason the ALJ provided for rejecting Dr. Jimenez's opinion.

      b.    *Inconsistency With Own Progress Notes*

The second reason the ALJ provided for rejecting Dr. Jimenez's opinion was that his opinion was inconsistent with the documented findings in Dr. Jimenez's own progress notes. The progress notes from each visit with Dr. Jimenez include comments regarding physical examinations. As the ALJ noted, the progress notes do not document any significant functional limitations. In fact, the physical examination comments show largely normal results. (*See e.g.*, 324-44, 418-24, 453-57) (physical examination comments reflecting "SPINE: no abnormalities, "EXTREMITIES: no abnormalities," "LOW BACK: rom normal.") These findings are inconsistent with Dr. Jimenez's opinions imposing extreme limitations of plaintiff's physical capabilities. Accordingly, this inconsistency was a specific and legitimate reason the ALJ provided for rejecting Dr. Jimenez's opinion.

/ / /

/ / /

8

   c. *Opinions On Mental Impairments*

   Lastly, the ALJ rejected Dr. Jimenez's opinion regarding plaintiff's mental impairments because Dr. Jimenez is not qualified to assess plaintiff's mental limitations and the record does not contain evidence of Dr. Jimenez performing a mental evaluation or clinical assessment. Plaintiff contends that as a treating physician, Dr. Jimenez is qualified to opine on plaintiff's mental impairments even though he is not an expert in the field. (JS 17.) Plaintiff is correct, but Dr. Jimenez's records do not support the contention that Dr. Jimenez ever treated plaintiff's alleged mental impairment. In this regard, the record includes a one-page questionnaire Dr. Jimenez completed regarding plaintiff's mental impairments. (AR 491.) Dr. Jimenez opined that plaintiff's mental impairments impose limitations in (a) daily activities and task completion resulting from a lack of focus, (b) social function because of isolation, and (c) adaptation to work because of behavioral issues. (*Id.*) Additionally, in the Physical Residual Functional Capacity Questionnaire, Dr. Jimenez simply checked off depression, anxiety, and schizophrenia as psychological conditions affecting plaintiff's physical condition. (AR 536.) These two questionnaires do not demonstrate that Dr. Jimenez ever treated plaintiff's mental impairments. Therefore, the ALJ properly dismissed Dr. Jimenez's opinion regarding plaintiff's mental impairment.

**B. The ALJ Properly Evaluated Plaintiff's Mental RFC**

   Plaintiff next contends the ALJ erred in his RFC determination by failing to include the mental limitations assessed by Dr. Jimenez and the state agency. (JS 13, 16-18.)

**1. Legal Standard**

   It is the solely the ALJ's responsibility to determine a claimant's RFC. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). RFC is the most the claimant can do in a work setting despite the physical and mental limitations caused by the claimant's impairments and related symptoms, such as pain. 20 C.F.R. §§ 404.1545(a)(1),

416.945(a)(1); *see also Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998) (residual functional capacity is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs") (internal quotation marks omitted) (citing 20 C.F.R. Part 404, subpt. P, app. 2 § 200.00(c)). The ALJ's RFC finding "must be based on *all* of the relevant evidence in the case record," including, *inter alia*, medical signs and laboratory findings; medical source statements; and effects of symptoms, including pain, that are reasonably attributable to a medically-determinable impairment. Social Security Ruling ("S.S.R.") 96-8p, 1996 WL 374184 (S.S.A.) at *5. However, the ALJ is not required to incorporate evidence from opinions of treating physicians which were permissibly discounted. *Batson v. Commissioner, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

**3.     Analysis**

*a.     Dr. Jimenez's Opinion*

As discussed above, the ALJ properly rejected Dr. Jimenez's opinions regarding plaintiff's mental impairments. The ALJ is not required to incorporate evidence from opinions of treating physicians which were permissibly discounted. *Batson v. Commissioner, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Therefore, the ALJ did not err by not incorporating Dr. Jimenez's opinions regarding plaintiff's mental impairments.

*b.     State Agency Opinion*

The state agency psychiatric consultants on the initial and reconsideration levels opined that plaintiff suffered from moderate impairments in the ability to perform activities within a schedule, sustain ordinary routine without special supervision, accept instructions and respond appropriately to criticism from supervisors, and the ability to complete normal workweek without an unreasonable number and length of rest periods. (AR 77-78, 109-10.) The ALJ gave great weight to the opinions of the state agency psychiatric consultants, and along with the medical evidence, the ALJ

opined that plaintiff's mental RFC is limited to "unskilled non-public work." (AR 23.) Plaintiff argues that the ALJ committed error by not including all of the limitations imposed by the state agency psychiatric consultants. (JS 13.) In particular, plaintiff argues the ALJ erred by not including a limitation involving "interacting with supervisors." (JS 19.)

Although the psychiatric consultants found the moderate impairments referenced by plaintiff, all of them agreed that plaintiff's RFC resulting therefrom was non-public, simple repetitive work. The consultants did not impose any restriction relating to supervision in their recommended RFCs. Therefore, plaintiff's claim is without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the Commissioner is affirmed.

IT IS SO ORDERED.

DATED: November 20, 2017

/S/ FREDERICK F. MUMM
FREDERICK F. MUMM
United States Magistrate Judge